

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/15/2016

| | | |
|---|---|---|
| IN RE: § | | |
| PETROLEUM PRODUCTS & SERVICES, § | CASE NO: 16-31201 | |
| INC.; dba WELLHEAD DISTRIBUTORS § | | |
| INT'L; dba WDI § | | |
|     Debtor(s) § | | |
| § | CHAPTER 11 | |
| § | | |
| DONALD ATENCIO, *et al* § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 16-03053 | |
| § | | |
| DONALD ATENCIO, *et al* § | | |
|     Defendant(s) § | | |

### MEMORANDUM OPINION

Donald Atencio and Wellhead Services, Inc. have moved for the Court to abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c) and 28 U.S.C. § 1452(b). Mandatory abstention pursuant to 28 U.S.C. § 1334(c) is appropriate. Accordingly, this adversary proceeding will be remanded to the 113th District Court, Harris County, Texas. The automatic stay remains in effect.

### Background

WDI provides a variety of products and services in the oil and gas production and exploration industry. (ECF No. 19 at 5). The company was originally founded by Atencio with Kiss as an employee. *Id.* In 1996, Kiss purchased WDI from Atencio. Atencio then founded a separate company, Wellhead Services, Inc. ("WSI"), which provided similar products and services to the oil and gas industry. (ECF No. 2-1 at 4). Kiss alleges that WSI struggled financially, requiring Atencio to seek other opportunities. In 2009, Atencio approached Kiss with the idea to form Fracmaster, LLC, to focus on safety equipment products and services to the

oil and gas industry, including wellheads and flowback equipment and services. (ECF No. 19 at 6).

On February 11, 2010, Atencio and the Alejandro Kiss and Mary Kathryn Kiss Revocable Living Trust executed a Company Agreement of Fracmaster, LLC. (ECF No. 2-2 at 51). Atencio and the Kiss Trust each received a 50% ownership stake in the new company. The Kiss Trust loaned Fracmaster $390,009.55 to finance the new venture. (ECF No. 19 at 6). Atencio contributed several patents which gave Fracmaster the exclusive right to market and sell certain devices essential to the operation of the company. (ECF No. 2-2 at 1). Pursuant to the Company Agreement, Atencio was the president of the company and responsible for operations and management, while Kiss was in charge of back office functions such as paying invoices and signing contracts with vendors. (ECF No. 19 at 6).

In approximately 2012, the drop in price of wholesale natural gas negatively impacted Fracmaster and the company struggled. (ECF No. 2-2 at 1). Kiss alleges that Atencio managed the company incompetently, causing its situation to worsen. He also alleges that Atencio restarted WSI and directly competed with Fracmaster for customers.[1] In turn, Atencio alleges that Kiss refused to contribute additional capital to the company, causing Atencio to pay vendors out of Atencio's own funds. (ECF No. 2-2 at 1). Atencio also alleges that Kiss engaged in self-dealing with Fracmaster and other non-WDI entities associated with Kiss. *Id.* at 2. During this time period, Fracmaster incurred a payable to WDI in the amount of $550,951.24 which went unpaid.

---

[1] Atencio claims that Kiss had full knowledge and gave his consent to Atencio operating WSI concurrently with Fracmaster. (ECF No. 2-2 at 4).

*Procedural Posture*

On October 31, 2014, Kiss and the Kiss Trust filed a lawsuit against Atencio, WSI, and Fracmaster in Harris County District Court for breach of contract and breach of fiduciary duty. (ECF No. 19 at 7). Atencio counterclaimed against Kiss, the Kiss Trust, and Fracmaster for breach of contract, declaratory relief regarding unpaid sales commissions and reimbursements, and for the appointment of a receiver over Fracmaster. (ECF No. 2-2 at 6-8). Kiss and the Kiss trust later amended their lawsuit seeking disgorgement of approximately $2.8 million that WSI received from a company called Red Dirt Rentals, Inc., which was allegedly a corporate opportunity belonging to Fracmaster. (ECF No. 19 at 7).

Of particular importance to this adversary proceeding, Atencio filed a First Amended Petition in Joinder on December 3, 2015, joining WDI, Slingshot Supply, Inc., and NDemand, Inc. as cross-defendants in the Harris County lawsuit. (ECF No. 2-14 at 69). Atencio alleged that Kiss managed WDI in direct competition with Fracmaster and that WDI used Fracmaster technology to siphon business to WDI. *Id.* at 74, 78.

On March 4, 2016, WDI filed for chapter 11 bankruptcy. (Case No. 16-31201; ECF No. 1). Kiss and the Kiss Trust removed the Harris County lawsuit to this Court on March 8, 2016. (ECF No. 1). On April 7, 2016, Atencio and WSI filed a motion for the Court to abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c), or alternatively to remand pursuant to 28 U.S.C. § 1452(b). Following a hearing on the motion to abstain on June 6, 2016, the Court took the matter under advisement.

**Analysis**

Under 28 U.S.C. § 1334(a), the United States District Court has "original and exclusive jurisdiction of all cases under title 11." In addition, district courts have "original but not

exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts may refer to bankruptcy courts "all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." *Id.* § 157(a).

Matters referred to a bankruptcy court are bifurcated into two categories: "core" and "non-core." *Id.* § 157(b). It is the bankruptcy court's responsibility to determine whether matters before it are core or non-core. *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2170 (2014). 28 U.S.C. § 157(b)(2) contains a non-exhaustive list of core proceedings. The relevant core matters are:

> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from the property of the estate;
>
> …
> (O) other proceedings affecting the liquidation of the assets of the estate. . . .

If a matter is core, the statute authorizes a bankruptcy judge to "hear and determine" and enter final judgment on a claim.[2] *Exec. Benefits*, 134 S.Ct. at 2172. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. *Id.*

The broad grant of jurisdiction contained in § 1334(b) is tempered by abstention principles applicable to certain state-law claims. Abstention is itself divided into two categories:

---

[2] *Stern v. Marshall* makes clear that a bankruptcy court may not enter final judgment even over some claims labeled by Congress as core. 131 S.Ct. 2594, 2608 (2011). Although "counterclaims by the estate against persons filing claims against the estate" are designated as core, a bankruptcy court does not have constitutional authority to enter final judgment over state law counterclaims not necessarily resolved by the proof of claim process. *Id.* Nevertheless, a bankruptcy court may enter final judgment over *Stern* claims with consent of all parties. *Wellness Int'l Network v. Sharif,* 135 S.Ct. 1932, 1949 (2015).

mandatory abstention and permissive abstention.  Mandatory abstention is codified in 28 U.S.C. § 1334(c)(2), which provides that:

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Courts have parsed this provision into a four part test to determine when a district court *must* abstain from hearing state law claims: "(1) the claims have no independent basis for federal jurisdiction other than § 1334(b); (2) the claims are non-core; (3) an action has been commenced in state court; and (4) the action can be timely adjudicated in state court." *Mugica v. Helena Chem. Co. (In re Mugica)*, 362 B.R. 782, 792 (Bankr. S. D. Tex. 2007) (citing *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 240 (5th Cir. 1997)).

If an adversary proceeding is core, then mandatory abstention does not apply and a court would look to permissive abstention.  Permissive abstention, in contrast to mandatory abstention, is equitable in nature and is left to a court's "broad discretion." *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996).  "[Permissive abstention] demonstrate[s] the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).  Relevant factors include:

(1) the effect or lack thereof on the efficient administration of the estate;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceedings commenced in state court or other nonbankruptcy proceedings;

(5) jurisdictional basis, if any, other than § 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy docket;

(10) the likelihood that the commencement of the bankruptcy proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of the right to a jury trial;

(12) comity; and

(13) the possibility of prejudice to other parties in the action.

*Ramirez v. Rodriguez (In re Ramirez)*, 413 B.R. 621, 631-32 (Bankr. S.D. Tex. 2009).

The Court must first determine if this adversary proceeding is core. Under *Wood*, a proceeding is core under § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97. The state law nature of a proceeding is not dispositive, as "many truly bankruptcy issues, like the determination of the basis for creditors' claims, turn on state law." *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 930 (5th Cir. 1999). Nevertheless, *Wood* cautions against interpreting § 157(b) in a way which would cause "the entire range of proceedings under bankruptcy jurisdiction [t]o fall within the scope of core proceedings. *In re Wood*, 825 F.2d at 95. A claim based on state created rights which, had there been no bankruptcy, could have proceeded in state court is likely not core. *Id.* at 97.

WDI argues that because Atencio has asserted a claim against WDI, this Court has the exclusive jurisdiction to determine that claim, making this adversary proceeding core.[3] But Atencio joining WDI in this lawsuit is not the "filing of a claim" that would invoke a core proceeding. *See In re Wood*, 825 F.2d at 97. Atencio has not filed a proof of claim in the main bankruptcy case "invok[ing] the peculiar powers of the bankruptcy court." *Id.* at 98. Just as in Wood:

> The essential issue in the proceeding is whether the defendants are liable to the plaintiffs under state law. The suit does not raise as primary issues such matters as dischargeability, allowance of the claim, or other bankruptcy matters. Conceivably, a final judgment in this proceeding in the plaintiff's favor may lead to proceedings to allow the claim. . . . At this juncture, however, these concerns are speculative and insubstantial issues in the proceeding. The plaintiff's suit is not a core proceeding.

*Id.*

Although Atencio's claims against WDI are non-core, WDI also points to Kiss's claims against Atencio and Fracmaster for an accounting in support of its argument that this adversary proceeding is core. At the June 3, 2016, hearing, WDI introduced a Fracmaster balance sheet showing that Fracmaster owed WDI $516,000. (WDI Ex. 1). Atencio admitted that Fracmaster owes the money and has still not paid WDI. (ECF No. 29 at 37). The right to collect the $516,000 is property of the WDI estate. But WDI has not yet sued Fracmaster to collect its receivable. The only response WDI has given in the state court litigation is a general denial which contains no mention of the money owed by Fracmaster. (ECF No. 2-23 at 9). A potential claim that *may* be asserted in the future cannot transform a non-core matter into a core one. *Cf.*

---

[3] WDI asserts that Atencio's First Amended Petition in Joinder alleges that Kiss conducted business through WDI in direct competition with Fracmaster and that, according to the petition, all of WDI's business from 1999 is allegedly the corporate opportunity of Fracmaster. WDI argues that this adversary proceeding is core because it requires a determination of what constitutes property of WDI's bankruptcy estate. This is not correct. The petition does not claim that WDI's property is rightfully the property of Fracmaster. The only claim asserted against WDI is a claim for tortious interference based on the Company Agreement. (ECF No. 2-14 at 77).

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 171 (3d Cir. 2009) (holding that in the context of related-to jurisdiction, an "inchoate" and "potential" claim is not sufficient to establish subject matter jurisdiction in the bankruptcy court). And, it is unclear whether the claim, if asserted, would be a "core" claim.[4]

Having established that this adversary proceeding is non-core, the Court turns to the remaining factors for mandatory abstention. WDI does not dispute that there is no independent basis for federal jurisdiction over this lawsuit other than 28 U.S.C. § 1334(b). Atencio has also established that an action has commenced in state court and can be timely litigated. The original lawsuit was filed in Harris County District Court on October 31, 2014, and WDI was joined on December 3, 2015. (Atencio Ex. 1 at 5, 8). Prior to the case being removed to this Court, the 113th District Court issued a scheduling order setting the case for trial on October 24, 2016. (WDI Ex. 11). Accordingly, Atencio has satisfied his burden that all requirements for mandatory abstention are present. This case must be remanded in its entirety to the 113th District Court, Harris County, Texas.

Although the case is remanded, the automatic stay remains in effect. No litigation may proceed against WDI. The Court will consider whether to lift the stay on the filing of a proper motion and response. In any such motion, Atencio must explain why litigation against WDI should be allowed to proceed. There is no timely-filed proof of claim, and the deadline has now passed.

---

[4] Turnover is a theoretical possibility. Nevertheless, for a matter to be core under §157(b)(2)(E), the debtor's rights to payment must be undisputed. *J.T. Moran Fin. Corp. v. Am. Consolidated Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 938 (Bankr. S.D.N.Y. 1991). WDI's right to payment cannot be said to be undisputed as the claim has not been asserted and Fracmaster has not had the opportunity to present a defense such as a potential set off.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **August 8, 2016.**

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Marvin Isgur
　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE